## NEW YORK & CUBA MAIL S. S. CO. v. AMERICAN S. S. OWNERS' MUT. PROTECTION & INDEMNITY ASS'N, Inc.

District Court, S. D. New York.
June 27, 1933.

Bigham, Englar, Jones & Houston, of New York City (Oscar R. Houston and Leonard J. Matteson, both of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Cletus Keating and Roger B. Siddall, both of New York City, of counsel), for respondent.

PATTERSON, District Judge.

The libelant sued to recover $14,364.97 under a marine protection and indemnity insurance cover. The facts are stipulated.

The libelant owned the steamship Mexico. The Mexico had a collision with the Hamilton in which both were damaged. The collision was caused by error in navigation on the part of each vessel. The Mexico had to turn back for safety, thus incurring expenses of a general average nature. As a result of the collision, the Mexico was damaged to the extent of $102,289.72, its cargo to the extent of $2,432.84, a total of $104,722.56. The Hamilton suffered damage in the sum of $16,173.-94. Suit having been brought by the owner of each vessel against the other, a settlement was made by the owner of the Hamilton, paying to the libelant, as owner of the Mexico and as bailee of her cargo, the sum of $44,-274.31, which represented one-half the difference in the damages.

The bills of lading under which the Mexico carried her cargo contained the usual Jason clause, permitting general average where the danger or disaster was due to errors in navigation. In accordance with this provision, expenses advanced by the Mexico were apportioned to cargo to the amount of $28,659.12. The libelant then treated the payment of $44,274.31 made by the Hamilton as including $28,729.94 for the Mexico's cargo, this figure being made up of cargo's contribution in general average in the sum of $28,659.12 and direct damage to cargo in the sum of $70.82. The theory of the adjustment was that the Mexico's cargo had had a direct claim against the Hamilton (asserted by the libelant as bailee of cargo) for this $28,729.94, and that one-half of this amount, $14,364.97, had been allowed to the Hamilton against the Mexico as part of the former's damage.

The Mexico was insured under a hull policy containing the standard running down clause framed on the theory of cross-liabilities, being in the same form as the clause later referred to under the club insurance, except that the hull policy covered four-fourths of the collision liability instead of three-fourths. The hull underwriters refused to pay the sum of $14,364.97, apparently on the ground that this sum was a liability "in respect of the cargo," and therefore excepted from the insurance on collision liability.

The club insurance, upon which this suit to recover $14,364.97 is based, has two clauses that are pertinent. Under clause 2, the in-

surance is against loss arising from liability for damage on collision with another vessel, to the extent that such liability would not be covered by hull policies with the standard running down clause, and subject to a deduction of $50.[1] Under clause 5, the insurance is against loss arising from liability for damage to or in connection with cargo. The libelant claims that the $14,364.97 was a loss under either of these clauses or under both. The respondent contends that the loss falls under neither; further, that in any event its liability is for no more than $1,216.42, which is one-half of the direct damage to the Mexico's cargo from the collision.

[1] This clause of the club insurance reads as follows:

"(2) Liability for loss or damage arising from collision with another vessel or craft to the extent only that such liability is not or would not be covered by hull policies under a clause in words or substance as follows:

" 'And it is further agreed, that if the Ship hereby insured shall come into collision with any other Ship or Vessel, and the Assured shall in consequence thereof become liable to pay, and shall pay by way of damages to any other person or persons any sum or sums not exceeding in respect of any one such collision the value of the Ship hereby Insured, we, the Assurers, will pay the Assured such proportion of three-fourths of such sum or sums so paid as our subscriptions hereto bear to the value of the Ship hereby insured. And in cases where the liability of the Ship has been contested with the consent in writing of a majority of the Underwriters on the hull and/or machinery (in amount) we will also pay a like proportion of three-fourths of the costs thereby incurred or paid; but when both Vessels are to blame, then, unless the liability of the Owners of one or both of such Vessels becomes limited by law, claims under the Collision Clause shall be settled on the principle of Cross-Liabilities as if the Owners of each Vessel had been compelled to pay to the Owners of the other of such Vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the Assured in consequence of such collision; and it is further agreed that the principles involved in this clause shall apply to the case where both Vessels are the property, in part or in whole, of the same Owners, all questions of responsibility and amount of liability as between the two ships being left to the decision of a single Arbitrator, if the parties can agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be appointed by the Managing Owners of both vessels, and one to be appointed by the majority (in amount) of Underwriters interested in each Vessel; the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, and the decision of such single, or of any two of such three Arbitrators, appointed as above to be final and binding. Provided always that this clause shall in no case extend to any sum which the Assured may become liable to pay, or shall pay for removal of obstructions under statutory powers, for injury to harbours, wharves, piers, stages, and similar structures, consequent on such collision, or in respect of the cargo or engagements of the Insured Vessel, or for loss of life, or personal injury.'

"(a) Each claim hereunder shall be subject to a deduction of $50."

1. Taking up clause 5 first, I am of opinion that the libelant cannot get any advantage from it. That clause gives indemnity against loss from liability in connection with cargo. In collisions where the vessels are equally at fault and both suffer injury, damages are divided, but there are no cross-liabilities between the vessels. There is only a single liability on the part of the ship whose loss is minor to pay one-half the difference to the ship whose loss is major. The North Star, 106 U. S. 17, 1 S. Ct. 41, 27 L. Ed. 91. The libelant, whose loss was greater, was therefore under no liability to the owner of the Hamilton and cannot recover under this clause. London Steamship Owners Insurance Co. v. Grampian Steamship Co., 24 Q. B. Div. 663.

2. The case is otherwise as to clause 2. The libelant was there insured against loss from liability in collision, in so far as such liability would not be covered by a running down clause containing (a) a provision for settlement on the principle of cross-liabilities, and (b) a proviso excluding any liability in respect of cargo on the insured vessel. I think the fair construction is that this clause, like the running down clause incorporated into it, contemplates a settlement on the principle of cross-liabilities. I am also of opinion that the liability of the Mexico to the Hamilton to pay one-half the sum which the latter was obligated for to the Mexico's cargo was a liability "in respect of" cargo, and that it was consequently excluded from the hull insurance by the proviso in the running down clause. It follows that this loss was covered by clause 2 of the club insurance.

3. It remains to consider whether the respondent is liable for $14,364.97, or only for $1,216.42. In The Toluma (D. C.) 4 F. Supp. 344, I held that the owners of cargo in a case of this type have no direct claim against the noncarrying vessel to recover the contributions in general average which they paid by operation of the Jason clause. They may of course hold the noncarrier for actual damages suffered by cargo as a result of the collision. The application of these views to the present case is that the Hamilton was liable to the Mexico's cargo for $2,432.84, and that the libelant's one-half thereof, as between the Mexico and the Hamilton, is the sum of $1,216.42.

The libelant is entitled to recover $1,216.42, with interest and costs.